# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SPIN MASTER LTD., a Canadian corporation, and SPIN MASTER TOYS UK LIMITED, a United Kingdom corporation,

Plaintiffs,

v.

TIANDIANFUSHI,

Defendant.

Case No. 26-cv-05863

**Judge LaShonda A. Hunt**

**Magistrate Judge Daniel P. McLaughlin**

## AMENDED COMPLAINT

Plaintiffs Spin Master Ltd. and Spin Master Toys UK Limited (collectively, "Spin Master" or "Plaintiffs") hereby bring the present action against Tiandianfushi ("Defendant") and allege as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant since Defendant directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce store operating under the seller alias Tiandianfushi (the "Seller Alias"). Specifically, Defendant has targeted sales to Illinois residents by setting up and operating an e-commerce store that targets United States consumers using at least the Seller Alias, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars from U.S. consumers, and

has sold products using infringing versions of Spin Master's federally registered trademarks to residents of Illinois. Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Spin Master substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Spin Master to combat an e-commerce store operator who trades upon Spin Master's reputation and goodwill by offering for sale and selling unauthorized and unlicensed products using infringing versions of Spin Master's federally registered trademarks (the "Unauthorized Products"). Defendant created an e-commerce store operating under the Seller Alias that is advertising, offering for sale, and selling Unauthorized Products to unknowing consumers. Defendant attempts to avoid and mitigate liability by operating under at least the Seller Alias to conceal both its identity and the full scope and interworking of its operation. Spin Master is forced to file this action to combat Defendant's infringement of its registered trademarks, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Spin Master has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendant's actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4. Plaintiff Spin Master Ltd. is a Canadian corporation with its principal place of business at 225 King Street West, Toronto, Ontario, Canada.

5. Plaintiff Spin Master Toys UK Limited is a United Kingdom corporation with an address of Meridian House, Fieldhouse Lane, Marlow, SL7 1TB United Kingdom.

6. Spin Master Corp. is the parent company of Plaintiffs Spin Master Ltd. and Spin Master Toys UK Limited. Spin Master Toys UK Limited is a subsidiary of Spin Master Ltd.

7. Spin Master is a leading global children's entertainment company that creates, designs, manufactures, and markets a diversified portfolio of innovative toys, games, products, and entertainment properties. Since 2000, Spin Master has received 96 Toy Industry Association (TIA) Toy of The Year (TOTY) nominations with 28 wins across a variety of product categories. Spin Master has been recognized with 13 TOTY nominations for Innovative Toy of the Year, more than any of its competitors. Spin Master is among a limited number of companies that not only develop and produce global entertainment properties, characters, and content, but also monetize that content through the creation, sale, and licensing of products.

8. One of the most popular Spin Master brands is Rubik's, a 3-D cube-shaped combination puzzle that consists of twisting and turning small cubes to return the 3-D cube to its original state with every side having one solid color, which comes in a variation of sizes, including Rubik's Cube 3x3 as shown in Figure 1 below with packaging ("Rubik's Products").



*Figure 1*

9.　　On January 4, 2021, Spin Master Corp. acquired Rubik's Brand Ltd., the previous holder of the rights to the Rubik's trademarks. Through this acquisition, Spin Master Corp. and Plaintiffs have gained significant common law trademark and other rights in its Rubik's trademarks and Rubik's Products through its predecessor's use, advertising, and promotion.

10. Rubik's sales have generated millions of dollars in revenue for Spin Master. Rubik's has been an enormously popular and iconic game for years, driven by the game's challenging and innovative design. Among the purchasing public, genuine Rubik's Products are instantly recognizable as such. The Rubik's brand has been a global success that resonates with children and adults worldwide, making Rubik's one of the most recognizable puzzles around the world.

11. The Rubik's trademark was first used in 1980, and products have continuously been sold under the Rubik's trademark and other trademarks (collectively, the "RUBIK'S Trademarks"). As a result of this long-standing use by Spin Master and its predecessor, strong common law trademark rights and goodwill have amassed in the RUBIK'S Trademarks. The RUBIK'S Trademarks are famous marks and valuable assets of Spin Master.

12. Spin Master Toys UK Limited is the lawful assignee and exclusive owner of the RUBIK'S Trademarks. Spin Master Ltd. is responsible for the enforcement of intellectual property rights that are controlled and/or owned by Spin Master Corp. and its subsidiaries, including the RUBIK'S Trademarks.

13. The RUBIK'S Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark |
|---|---|
| 1,265,094 | |

14. The above U.S. registration for the RUBIK'S Trademarks is valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. Incontestable status under 15 U.S.C. § 1065 provides that the registration for the RUBIK'S Trademarks is conclusive evidence of the validity of the RUBIK'S Trademarks and of the registration of the RUBIK'S Trademarks, of Spin Master Toys UK Limited's ownership of the RUBIK'S Trademarks, and of Spin Master's exclusive right to use the RUBIK'S Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065. A true and correct copy of the United States Registration Certificate for the above-listed RUBIK'S Trademark is attached hereto as **Exhibit 1**.

15. The RUBIK'S Trademarks are distinctive when applied to Rubik's Products, signifying to the purchaser that the products come from Spin Master and are manufactured to Spin Master's quality standards. Whether Spin Master manufactures the products itself or contracts with others to do so, Spin Master has ensured that products bearing the RUBIK'S Trademarks are manufactured to the highest quality standards.

16. The RUBIK'S Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Rubik's Products have enabled the Rubik's brand to achieve widespread recognition and fame. The widespread fame, outstanding reputation, and significant goodwill associated with the Rubik's brand have made the RUBIK'S Trademarks valuable assets of Spin Master.

17. Spin Master has expended substantial time, money, and other resources in advertising and promoting the RUBIK'S Trademarks. In fact, Spin Master has expended millions of dollars in advertising, promoting, and marketing featuring the RUBIK'S Trademarks. Rubik's Products have also been the subject of extensive unsolicited publicity resulting from their high-

quality, innovative designs. As a result, products bearing the RUBIK'S Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Spin Master. Rubik's Products have become among the most popular of their kind in the U.S. and the world. The RUBIK'S Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the RUBIK'S Trademarks is of incalculable and inestimable value to Spin Master.

18. Genuine Rubik's Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Rubik's brand.

19. Rubik's Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, and through the rubiks.com webstore. Sales of Rubik's Products via the rubiks.com webstore are significant. The rubiks.com webstore features proprietary content, images, and designs exclusive to Spin Master.

**The Defendant**

20. Defendant is an individual and/or business entity of unknown makeup who owns and/or operates at least the e-commerce store under the Seller Alias and/or other seller aliases not yet known to Spin Master. On information and belief, Defendant resides and/or operates in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistributes products from the same or similar sources in those locations. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

21. On information and belief, Defendant operates the e-commerce store under the Seller Alias. Tactics used by Defendant to conceal its identity and the full scope of its operation make it virtually impossible for Spin Master to discover Defendant's true identity and the exact

interworking of its network.  If Defendant provides additional credible information regarding its identity, Spin Master will take appropriate steps to amend the Amended Complaint.

## IV. DEFENDANT'S UNLAWFUL CONDUCT

22.     The success of the Plaintiffs' brand has resulted in significant infringement of the RUBIK'S Trademarks. Consequently, Plaintiffs have a worldwide anti- infringement program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.  In recent years, Plaintiffs have identified many fully interactive, e-commerce stores offering Unauthorized Products on online marketplace platforms including the e-commerce store operating under the Seller Alias.  The Seller Alias targets consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[1] The primary source of all those counterfeits, the OECD and others say, is China.[2]

23.     Third party service providers like those used by Defendant do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[3]  Infringers hedge against the risk of being caught and having their websites taken

---

[1] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[2] *Id.; See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[3] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[4] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[5] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[6]

24. Defendant has targeted sales to Illinois residents by setting up and operating an e-commerce store that targets United States consumers using at least the Seller Alias, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars from U.S. consumers, and has sold Unauthorized Products to residents of Illinois. Screenshots evidencing Defendant's infringing activities are attached as **Exhibit 2**.

25. Defendant facilitates sales by designing the e-commerce store operating under the Seller Alias so that it appears to unknowing consumers to be an authorized online retailer, outlet store, or wholesaler. The e-commerce store operating under the Seller Alias appears sophisticated and accepts payment in U.S. dollars from U.S. consumers. The e-commerce store operating under the Seller Alias often includes content and images that make it very difficult for consumers to distinguish it from an authorized retailer. Spin Master has not licensed or authorized Defendant to use any of the RUBIK'S Trademarks, and Defendant is not an authorized retailer of Rubik's Products.

---

[4] *Id.* at 22.
[5] *Id.* at 39.
[6] Chow, *supra* note 4, at 186-87.

26. Defendant omits using the RUBIK'S Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Rubik's Products.

27. E-commerce store operators like Defendant commonly engage in fraudulent conduct when registering seller aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identity and the scope of their e-commerce operation.

28. E-commerce store operators like Defendant regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendant to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

29. E-commerce store operators like Defendant communicate with each other on chat rooms and through websites regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

30. Infringers such as Defendant typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Spin Master's enforcement. E-commerce store operators like Defendant maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Spin Master. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

31. Defendant is working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Products. Defendant, without any authorization or license from Spin Master, has knowingly and willfully used and continue to use the RUBIK'S Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

32. Defendant's unauthorized use of the RUBIK'S Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Spin Master.

## COUNT I
## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

33. Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34. This is a trademark infringement action against Defendant based on its unauthorized use in commerce of infringing imitations of the federally registered RUBIK'S Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The RUBIK'S Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Rubik's Products offered, sold, or marketed under the RUBIK'S Trademarks.

35. Defendant has sold, offered to sell, marketed, distributed, and advertised, and is still selling, offering to sell, marketing, distributing, and advertising products using infringing reproductions of the RUBIK'S Trademarks without Spin Master's permission.

11

36.     Spin Master Toys UK Limited is the exclusive owner of the RUBIK'S Trademarks. Spin Master Toys UK Limited's United States Registration for the RUBIK'S Trademarks (**Exhibit 1**) is in full force and effect.  On information and belief, Defendant has knowledge of Spin Master's rights in the RUBIK'S Trademarks and is willfully infringing and intentionally using infringing versions of the RUBIK'S Trademarks.  Defendant's willful, intentional, and unauthorized use of the RUBIK'S Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

37.     Defendant's activities constitute willful trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38.     Spin Master has no adequate remedy at law and, if Defendant's actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the goodwill of the RUBIK'S Trademarks.

39.     The injuries and damages sustained by Spin Master have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

40.     Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

41.     Defendant's promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Spin Master or the origin, sponsorship, or approval of Defendant's Unauthorized Products by Spin Master.

12

42. By using the RUBIK'S Trademarks in connection with the Unauthorized Products, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

43. Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of infringing marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44. Spin Master has no adequate remedy at law and, if Defendant's actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the goodwill of the Rubik's brand.

**PRAYER FOR RELIEF**

WHEREFORE, Spin Master prays for judgment against Defendant as follows:

1) That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with it be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the RUBIK'S Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Rubik's Product or is not authorized by Spin Master to be sold in connection with the RUBIK'S Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Rubik's Product or any other product produced by Spin Master, that is not Spin Master's or not produced under the authorization, control, or supervision of Spin Master and approved by Spin Master for sale under the RUBIK'S Trademarks;

13

c. committing any acts calculated to cause consumers to believe that Defendant's Unauthorized Products are those sold under the authorization, control, or supervision of Spin Master, or are sponsored by, approved by, or otherwise connected with Spin Master;

d. further infringing the RUBIK'S Trademarks and damaging Spin Master's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Spin Master, nor authorized by Spin Master to be sold or offered for sale, and which bear any of Spin Master's trademarks, including the RUBIK'S Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Spin Master's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as PayPal and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of counterfeit and infringing goods using the RUBIK'S Trademarks;

3) That Defendant accounts for and pays to Spin Master all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the RUBIK'S Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Spin Master be awarded statutory damages for willful trademark infringement pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the RUBIK'S Trademarks;

5) That Spin Master be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 21st day of May 2026.        Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Trevor C. Talhami
Hannah E. Dawson
Greer, Burns & Crain, Ltd.
200 W. Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
ttalhami@gbc.law
hdawson@gbc.law

*Counsel for Plaintiffs*
*Spin Master Ltd. and Spin Master Toys UK Limited*